JESSE M. ADAMS, as Administrator with the Will Annexed of the Estate of JOHN A. SHERMAN, Deceased, Appellant, *v*. GEORGE B. MASSEY, Respondent.

1. WILL — WHEN LIFE ESTATE WILL NOT BE CONVERTED INTO ABSOLUTE ESTATE IN FAVOR OF SAME PERSON BY CLAUSE OF DOUBTFUL MEANING. A life estate expressly created by a will cannot by a later clause be converted into an absolute estate in favor of the same person, on the theory that where two testamentary clauses are antagonistic the later must stand as the last expression of intention, unless the later clause is as clear as the first and cannot be reconciled therewith and the

real intent of the testator cannot be gathered from the general scope of the will or otherwise; where there is no doubt as to the meaning of the first clause, while there is doubt as to the meaning of the later clause, so that either of two constructions is possible, that construction will be adopted which will give effect to both; doubt as to the meaning of the last, instead of destroying the limitation in the first clause, confirms it.

2. SAME.   A holographic will provided, "I give, devise and bequeath to my   *   *   *   wife" certain real estate and personal property, including shares of corporate stock, "To have and to hold during her natural life."   By a subsequent clause the testator provided, "I further give and bequeath any other property not herein otherwise before disposed of that may be in my possession at the time of my decease to my wife   *   *   *   first to liquidate any indebtedness that may be against me; the balance, if any, to be at her sole disposal."   At the date of his will he had no property not specifically mentioned therein, except some money in the bank, and at the date of his death his assets were about the same, except the cash in the bank was less, and he had acquired some additional corporate stock.   In an action by his representative commenced after the death of the widow, to recover the shares of capital stock given to her for life and claimed to have been bequeathed to her absolutely by the later clause, upon the ground that they were unbequeathed assets belonging to his estate, *held,* upon an examination of the two clauses — the first explicitly creating a life estate, while the later, to say the least, was of doubtful meaning — also upon a consideration of the situation of the parties at the time of the execution of the will and at testator's death, and of his actual intent as disclosed by the language used therein — that the life estate of the widow as to the securities mentioned was not by the later clause converted into an absolute estate in her favor, and that the plaintiff was entitled to recover.

*Adams* v. *Massey,* 102 App. Div. 620, reversed.

(Argued January 15, 1906; decided February 13, 1906.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered March 13, 1905, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court on trial at Special Term.

John A. Sherman, formerly of the city of Watertown, died on the 25th of March, 1882, when he was about seventy-five years of age.   He left a last will and testament, dated January 1st, 1877, executed on the 20th of April following and admitted to probate on the 10th of April, 1882.   The plaintiff is his legal representative.

He left him surviving his widow, Julia Ann, who, after re-marrying, died on the 13th of October, 1901, in the ninety-fifth year of her age. The defendant is her legal representative.

Mr. Sherman also left a daughter, Caroline, who married one Daniel S. Marvin in 1863 and died in 1896 at the age of sixty-three, having never had any children. She was the only child of Mr. Sherman and his wife and at the date of the will, as well as at the date of his death, was a member of his family. For nearly twenty years prior to his death she was an invalid and during the last ten years of his life she did not leave his house, except occasionally for a drive, when she was assisted to and from the carriage and was accompanied by some one during the ride. Her husband lived with her as a member of Mr. Sherman's family, which consisted of the four persons named. Mr. Marvin was not engaged in any commercial business, but managed a small nursery of his own.

Mr. Sherman had had a large experience in business affairs and was director of a national bank, trustee of a savings bank and president of the Agricultural Insurance Company. His estate, worth nearly $100,000, consisted of the property specifically mentioned in his will, together with about $1,500 on deposit in various banks at the date of the will, and at the date of his death his assets were about the same, except that the money in bank had run down to about $700, while he had added to his holdings in stocks by the purchase of insurance and bank shares worth about $4,000. The amount of his debts at either date does not appear.

The will is wholly in the handwriting of Mr. Sherman, who was not a lawyer, and so far as appears was drawn by him without assistance or advice. The first clause disposes of nothing, but is confined to recitals and statements of no value in this controversy. The second clause is as follows:

" 2nd. I give, devise and bequeath to my ever faithful and beloved wife, Julia Ann, my present residence situate on the corner of Stone and Massey street, in the City of Watertown, together with all the appurtenances thereunto belonging, consisting of household furniture, beds and bedding, all and

everything therein contained except the works of art executed by my daughter Caroline, all of which belong to her. Also horse and cow, carriages, sleighs and harness which may be in my possession at the time of my decease. Also my gold watch, also ($3,000) Three Thousand Dollars of the capital stock of the Agricultural Insurance Co., of Watertown, N. Y. Also ($1,500) one thousand five hundred dollars of the capital stock of the National Union Bank of Watertown. Also five shares of the American Express Co. of the City of N. Y. To have and to hold during her natural life."

By the third clause he gave his daughter Caroline " $2,000 of the capital stock of the Agricultural Insurance Company," and by the fourth and fifth $5,000 of the capital stock of the Watertown Fire Insurance Company to each of his sisters, Sylvia Orinda Lewis and Mary Jane Sherman.

By the sixth clause he gave to the Young Men's Christian Association of Watertown a valuable piece of real property, known as Washington Hall, in the city of Watertown, subject to an annual charge out of the rents and profits of $2,500 to be paid in quarterly installments to his wife during her life, and in case his daughter should outlive her mother, " then the sum of $2,000 annually shall be paid her or her legal representatives during her life in the same manner as above stated to her mother."

By the seventh clause he gave certain directions in relation to the management of the Washington Hall property and closed the same by an independent sentence in these words: " I further give and bequeath any other property not herein otherwise before disposed of that may be in my possession at the time of my decease to my wife Julia Ann, first to liqui-date any indebtedness that may be against me; the balance, if any, to be at her sole disposal."

This sentence, in the handwriting of Mr. Sherman, was written on a separate piece of paper, which was pasted upon the margin of the page in the form of a rider, so that it loosely folded over but did not obscure the last part of the seventh clause, as originally written.

By the eighth clause he appointed his wife, "with the advice and council, D. S. Marvin, husband of my daughter Caroline," and his friend G. B. Massey, his "sole executor and administrator." There was no other clause which disposed of anything and all the gifts except the last were of specific property. Whenever he gave real estate or real and personal property he began the clause with the words, "I give, devise and bequeath," and whenever he gave personal property only he began the clause with the words, "I give and bequeath," which were also used to begin the last sentence above quoted.

This action was brought to recover thirty shares of the capital stock of the Agricultural Insurance Company, fifteen shares of the capital stock of the National Union Bank and five shares of the capital stock of the American Express Company, mentioned in the second clause, on the ground that they were unbequeathed assets belonging to the estate of John A. Sherman, deceased. The answer admitted the ownership of the shares in question by the testator at the date of his death and alleged that the same are now in the possession of the defendant claiming title thereto as the personal representative of Julia A. Sherman, deceased, but denied that the plaintiff had any interest therein. Judgment was demanded "for the possession of the stock above mentioned and that the defendant may be adjudged to deliver the same up to the plaintiff" with damages for detention and also damages to the amount of the value thereof in case delivery could not be made.

Upon the first trial the plaintiff had judgment, which was reversed by the Appellate Division on appeal. (*Oakes* v. *Massey*, 94 App. Div. 165.) Upon the second trial the court found the facts substantially as above stated and ordered judgment in favor of the defendant upon the ground that the seventh clause of the will was residuary in character and that thereby the testator gave the shares of stock in question to his wife absolutely. The Appellate Division affirmed unanimously, and the plaintiff appealed to this court.

*E. C. Emerson* for appellant. The limitation for life contained in the second clause of the will applied to all the property mentioned in that clause and limited the estate bequeathed to the lifetime of the widow. (*Areson* v. *Areson*, 3 Den. 458; 5 Hill, 410; *Place* v. *Burlingame*, 75 Hun, 432; 149 N. Y. 617; *Lambert* v. *People*, 76 N. Y. 220; *Coxson* v. *Doland*, 2 Daly, 66; *Matter of Beach*, 1 Misc. Rep. 29; *Smith* v. *Van Nostrand*, 64 N. Y. 278.) The estate thus granted having been clearly limited to the life of the testator's wife, such limitation cannot be destroyed by construction and the estate granted turned into a fee. (*Norris* v. *Beyea*, 13 N. Y. 273; *Sweet* v. *Chase*, 2 N. Y. 73; *Trustees* v. *Kellogg*, 16 N. Y. 88; *Taggart* v. *Murray*, 53 N. Y. 233; *Van Vechten* v. *Keator*, 63 N. Y. 52; *Everett* v. *Everett*, 29 N. Y. 83; *Chrystie* v. *Phyfe*, 19 N. Y. 348; *Van Nostrand* v. *Moore*, 52 N. Y. 12; *Roseboom* v. *Roseboom*, 15 Hun, 315.) There was in this case no such inconsistency between the provisions of the will as would destroy the limitation contained in the second clause in case the residuary clause was given full effect, nor did the residuary clause by apt, clear and decisive words assume to remove that limitation. (*Roseboom* v. *Roseboom*, 81 N. Y. 356; *Banzer* v. *Banzer*, 156 N. Y. 429; *Clarke* v. *Leupp*, 88 N. Y. 228; *Freeman* v. *Coit*, 96 N. Y. 67; *Goodwin* v. *Coddington*, 154 N. Y. 286; *Benson* v. *Corbin*, 145 N. Y. 351; *Byrnes* v. *Stillwell*, 103 N. Y. 453.) The presumption that a residuary clause disposes of all remainders that are otherwise undisposed of has no application to this case. (*Floyd* v. *Carew*, 88 N. Y. 560; *Lamb* v. *Lamb*, 131 N. Y. 227; *Matter of Allen*, 151 N. Y. 249; *Kerr* v. *Dougherty*, 79 N. Y. 328; *Morton* v. *Woodbury*, 153 N. Y. 256; *Matter of Wolley*, 78 App. Div. 225; *Smith* v. *Smith*, 141 N. Y. 34; *Carpenter* v. *Carpenter*, 2 Dem. 534; *Stimson* v. *Vrooman*, 99 N. Y. 79.) The language of the residuary clause shows that the testator did not intend it should apply to the remainder in the property mentioned in the second clause. (*Roe* v. *Avis*, 4 D. & E. 604; *Leggett* v. *Firth*, 132 N. Y. 7; *Moffett* v. *Elmendorf*, 152 N. Y. 475.)

*Harvey W. Steele* and *Joseph Atwell* for respondent. The will should be construed, if possible, to avoid intestacy as to any property or interest in property of the testator. (*Bates* v. *Hillman*, 43 Barb. 645; *Thomas* v. *Snyder*, 43 Hun, 14; *Zone* v. *Zone*, 4 Misc. Rep. 559; *Ball* v. *Dixon*, 83 Hun, 344; *Haight* v. *Pine*, 3 App. Div. 434; *Shangle* v. *Halleck*, 6 App. Div. 55; *Vernon* v. *Vernon*, 53 N. Y. 351; *Shult* v. *Moll*, 132 N. Y. 122; *Johnson* v. *Brasington*, 156 N. Y. 187; *Ward* v. *Stannard*, 82 App. Div. 386.) Under the residuary clause of the will, all real and personal property, or interest in real and personal property owned by the testator at the time of his death, other than that specifically devised or bequeathed in said will, passed to his wife absolutely. (*Smith* v. *Smith*, 31 App. Div. 598; *Delehanty* v. *St. V. O. Asylum*, 56 Hun, 55; *House* v. *Raymond*, 3 Hun, 44; *Wyman* v. *Woodbury*, 86 Hun, 227; *Matter of Hodgman*, 69 Hun, 484; *Morton* v. *Woodbury*, 153 N. Y. 243; *Gilman* v. *Reddington*, 24 N. Y. 9; *Powers* v. *Cassidy*, 79 N. Y. 602; *Floyd* v. *Carow*, 86 N. Y. 560; *Lamb* v. *Lamb*, 131 N. Y. 227.) The claim of plaintiff, that the testator intended that the residuary clause of his will should apply only to after-acquired property cannot be sustained. (*Tilden* v. *Green*, 130 N. Y. 51.)

VANN, J. The question presented for decision is whether the testator intended by the seventh clause of his will to include the property mentioned in the second clause and thus to destroy the limitation in the latter by making the gift absolute instead of for life only. The question is difficult, and it is but natural that learned judges should differ as to the solution. We appreciate the able argument of the Appellate Division and should be glad to follow it, but the law requires us to decide the case upon our own judgment, and if in our opinion the weight of reason is on the side of the appellant, even if the preponderance is slight, he is entitled to a reversal of the judgment against him. The sole question is, what did the testator intend, and, while there is no difference of opinion as to the legal principles to be used as guides to learn his

intention, there is serious difference as to what he meant, even after these principles have been applied.

It is conceded by both parties that the limitation at the close of the second clause applies to all the property mentioned therein, both real and personal, and that the effect thereof, if it stood alone, would limit the gift to the life of the widow. In reading the will we thus start with a limitation which could not be more simply expressed, nor could it be more plain, clear and unmistakable in its meaning. Such a limitation cannot be nullified by construction on the theory that where clauses are antagonistic the later must stand as the last expression of intention, because that theory rests only upon necessity and is never applied unless the last clause is as clear as the first, and cannot be reconciled therewith. It is only when the later provision is as plain and decisive as the earlier; when the real intent of the testator cannot be gathered from the general scope of the will or otherwise, and when the two provisions are wholly irreconcilable and cannot possibly stand together, that, as a desperate remedy, resort is had to the last clause as expressing the latest intent in order to save one instead of sacrificing both. (*Roseboom* v. *Roseboom*, 81 N. Y. 356, 359; *Van Nostrand* v. *Moore*, 52 N. Y. 12, 20; *Trustees Theological Seminary of Auburn* v. *Kellogg*, 16 N. Y. 83, 88; *Banzer* v. *Banzer*, 156 N. Y. 429; *Goodwin* v. *Coddington*, 154 N. Y. 283.) While these cases relate to a change by cutting down an estate previously granted, the same principle applies to a change by which a limitation to life is converted into an absolute estate in favor of the same person, resulting in the disinheritance of the heir at law. " The legal presumption is that when a testator devises less than his whole interest, he knows that the law gives the remainder to his heirs." (*Areson* v. *Areson*, 3 Den. 458, 464.)

If there is no doubt as to the meaning of the earlier clause, while there is doubt as to the meaning of the later, so that either of two constructions is possible, that construction will be adopted which will give effect to both. Doubt as to the

meaning of the last clause, instead of destroying the limitation in the first, confirms it. An express limitation cannot be cut down by a clause of doubtful meaning.

With these principles in mind, a comparison of the two clauses in the light of the other provisions of the will shows that they are not so repugnant that they cannot be reconciled. Referring to them for convenience as the first and last clauses, we find that the first admits of no discussion, for it can have but one meaning which is manifest upon the first reading. The last clause, unlike the first, contains no words appropriate to the disposition of real estate. This is not without significance even in a will drawn by a layman, who, down to the last clause, at least, used the word "devise" when speaking of real estate, and the words "give and bequeath" when speaking only of personal property. While a "devise" ordinarily passes real estate, and a "bequest" personal property, still it is important to note that the testator was conscious of the distinction between these words and used them with an accurate and discriminating meaning. Although it is evident that he was somewhat familiar with the technical language of well-drawn wills, although he did not always use it accurately, we find no word in the last clause which is commonly used to dispose of the residuum of an estate such as rest, residue or remainder. He does speak of "any other property not herein otherwise before disposed of" that might be in his possession at the time of his decease, and the property mentioned in the first clause had not been completely disposed of as only a life interest therein had been given. He did not, however, necessarily refer to that property, for he may have meant the money in bank, amounting to over $1,500, which had not been disposed of, and to property that he might acquire thereafter. Both money on deposit, varying in amount from day to day, and after-acquired property might well be referred to as that which "may be in my possession at the time of my decease," for it could not be specifically described, and down to the last clause specific description had been the rule of action. He used the same expression in the first clause when referring

to his horse, cow, carriages and other articles subject to frequent change, showing his care when there was any doubt in his mind as to what property would be in his possession at the time of his decease.   While he may have intended to include everything, not only the money in bank and property that he might acquire, but also that which was enumerated in the first clause, his language does not compel that construction.   It permits the inference that in writing the words "before disposed of," under the circumstances, he meant "before mentioned," although that would not be their ordinary meaning if they stood alone.

But, reading on, we at once reach language which throws much light upon the meaning of the last clause, because the testator states his object in writing it.   He declares that object to be "first to liquidate any indebtedness that may be against me" and second, "the balance, if any, to be at" the sole disposal of his wife.   The primary object of the clause as unmistakably declared by the testator, was to pay his debts and the secondary object to give the balance, after expressing a doubt whether there would be any, to his wife.   If he intended by this·language that the money in bank and the property that he might subsequently acquire should be devoted to this purpose, it would be natural and reasonable and the doubt as to whether there would be any left would not seem strange.   If, however, he meant to make the last clause a general residuary clause and to thereby require that the remainder created by giving the homestead to his wife for life, and the personal property, subject to a life interest of his wife therein, should be sold to pay his debts, we encounter practical difficulties of a serious character.   What would the property, real or personal, bring if sold under such circumstances?   Is it reasonable to believe that a practical man of affairs intended any such result?   He apparently thought that the property devoted to the payment of his debts might be thereby exhausted and that there might not be any balance for his wife.   Did he intend that the remainder created by the first clause should be sold and that his daughter,

upon the death of her mother, already an old woman, should be turned out of the home where she had always lived? He had not provided her with means to bid in the remainder when sold to pay his debts and so far as appears neither herself nor her husband was in a situation to purchase it. While he gave $60,000 to charity, $10,000 to his sisters, and, according to the contention of the defendant, property worth over $20,000 to his wife, besides an annuity of $2,500 for life, he gave but $2,000 to his daughter, together with an annuity of $2,000 to commence on the death of her mother. Thus, according to the theory which has thus far prevailed, he left his only child, an invalid, who had always lived with him, no means of protecting herself from being turned out of doors upon the death of her mother, and deprived her even of the horse and carriage which she needed in order to get about. He may have expected her mother to look out for her, but there is no evidence that he did, and we have no right to assume that he did. He may have thought that his daughter would not survive her mother, but we cannot act on mere conjecture. When the whole will is read together in the light of the circumstances surrounding the testator when he wrote it, is it reasonable to conclude that he intended to cause the homestead to be sold away from his daughter if she survived her mother? Did he intend to turn the family home, furniture, beds, bedding, horse, cow and all the articles used by himself, his wife and child in their daily life for so many years into a fund to pay his debts, when he was a man of ample means and had an abundance of salable personal property to use for that purpose? Did he intend to break up his daughter's home in order to exonerate his gifts to charity and to collateral relatives from the payment of his debts? The presumption is that his debts were not large, for he was in no business and he had $1,500 in bank and valuable personal property which could be turned into money without sacrifice or delay. The property described in the earlier clause was worth over $15,000. When the testator died his wife was seventy-six years old, and, according to the Northampton tables, her life estate was worth about $3,500,

and the remainder about $11,800. Did he intend that the remainder, which was actually worth three times as much as the life estate, should be sold, subject to the life estate, for the comparatively small sum it would be apt to bring under such circumstances? Who but a speculator would bid on it? The risk of not getting the property until the outstanding life fell in would make the investment very undesirable, and is it probable that the testator would devote so much property to the payment of his debts when it could not be utilized for that purpose without sacrifice, and the sale of which might cause such inconvenience to his only child? He makes his intention clear in the first clause, and if he intended to change it in the last why did he not say so in plain terms?

We think that the last clause, to say the least, is ambiguous and, hence, open to either of the two constructions suggested. What reason is there for adopting the construction that would destroy the limitation for life, disrupt the general scheme of the will and lead to results so inconvenient and unjust as to make it improbable that they were intended by the testator?

The argument in favor of the respondent rests mainly on three presumptions: 1. That a general residuary clause carries with it all reversionary interests and remainders. 2. That the testator intended to dispose of all his estate and to die intestate as to no part thereof. 3. That if the property went to his wife it would in the ordinary course of nature ultimately reach his relatives and heirs and not pass through his son-in-law to strangers to his blood.

These presumptions are founded upon presumed intention and always yield to the actual intention when it can be gathered from the entire will. The last clause is not in form a general residuary clause, although it might be held such and standing alone doubtless would be. The reasons for giving it a limited instead of a general effect have already been set forth.

The presumption against intestacy is met by the presumption against disinheriting the heir and assuming them to be of equal strength they neutralize each other. (*Bumpus* v.

*Bumpus*, 79 Hun, 526, 530.) While it might be argued that the former is artificial and that the latter is founded in the strong natural love of parent for child, still it is doubtful if either party has any decided advantage from these presumptions.

The last presumption is founded on a natural desire and is not without force, but it is attended with too many uncertainties to make it of great value. It should also be said that there is no evidence that the testator did not have full confidence in his son-in-law and, indeed, when appointing his wife as executrix, he recommended her to take his advice and counsel.

Giving adequate force to all presumptions and to the argument of both parties resting on the general scope and the real meaning of the will when all its provisions are read together, as well as upon the surrounding circumstances, we are of the opinion that the testator did not intend to destroy the limitation in the first clause and that he intended by the last clause to include only the money on deposit and such property as he expected to acquire after he wrote his will. This conclusion requires us to reverse the judgment appealed from and to order a new trial, with costs to abide event.

CULLEN, Ch. J., O'BRIEN and WILLARD BARTLETT, JJ., concur; HAIGHT and WERNER, JJ., dissent; HISCOCK, J., not sitting.

Judgment reversed, etc.