In the Matter of the Estate of MARY E. FITZGERALD, Deceased. ERICA BROOKS et al., Appellants; JAMES P. FITZGERALD et al., Respondents.

Third Department, March 8, 1968.

*Costello, Cooney & Fearon* (*Bruce B. Roswig* of counsel), for Order Minor Conventuals, appellant.

*Milton B. Knox* for Erica Brooks, appellant.

*Higgins, Roberts & Beyerl* for executors, respondents.

*Frankel & Frankel* (*Jacob M. Frankel* and *Henry Levine* of counsel), for James P. Fitzgerald and others, respondents.

*Henry Levine,* special guardian for Colon Fitzgerald, an infant, respondent.

*Tobin & O'Brien* for Roman Catholic Diocese, respondent.

*Per Curiam.* Appeal is taken by Erica Brooks and by Order Minor Conventuals, two of the legatees under the will, from a decree of the Surrogate's Court of Schenectady County, which, in a proceeding for the judicial settlement of the executors' account, construed the will, settled the account and directed distribution.

The second paragraph of the holographic will, bequeathed "amt in Banks" to be divided between the two appellant legatees, and the issue presented to the Surrogate and now submitted to us is the construction of that paragraph. The specific question is whether the bequest is limited to the amount of two bank accounts in testatrix' name, aggregating $902.94 at the date of the will, or whether the bequest includes the additional amount of some $62,200, the aggregate of certain savings bank accounts in which she and Joseph H. Killian, her uncle, had interests, and complete title to which vested in her on Mr. Killian's death. These consisted of an account of approximately $12,000 in the name of "Joseph H. Killian, as trustee for Mary E. Fitzgerald" and four accounts aggregating $50,200, each in the names of "Joseph H. Killian or Mary E. Fitzgerald".

The chronology of events being important, it must be noted that the will was executed on September 17, 1963; that testatrix died just one year later, on September 17, 1964; and that Joseph H. Killian died intermediate these dates, on January 1, 1964.

The court found "ample evidence of the intent of this testatrix in the nature and provisions of the will itself and the testimony of the subscribing witnesses" and hence found it unnecessary to resort to the canons of construction urged by appellants' counsel.

The will was prepared by testatrix and was executed as she sat in her hospital bed, prepared for major surgery — a radical mastectomy — performed later that day. The dispositive portion of the will consists of a listing of many specific items of property, each followed by the name of a person or organization (e.g., "200 Lestoil shares Sacred Heart Program Boston N. Y. Fr. Hale & Fr. Murray"; "100 Ford Stock Franciscan Missions"; "Rambler car — to Irene Bootier"). The Surrogate referred to the paper as a "rough outline" and, after remarking that decedent listed thereon "all her possessions and named the recipients", said that by reason of "the imminence of the operation she made use of the outline itself as a will". The paragraph here in issue provided: "amt in Banks

to be divided between Mrs. Erica Brooks 180 Washington Ave Albany N Y &. Third Order of St. Francis, Cyril & Methodius Church Congress St Schdy ''. By the decree appealed from it was adjudged, among other things, that '' the Order of Minor Conventuals [is] herein determined under the cy pres doctrine [to be] the proper repository for the legacy bequeathed to the Third Order of St. Francis ''. Mrs. Brooks was not related to the decedent, who did make substantial provision for a brother and made smaller gifts to other relatives. The record discloses nothing as to the circumstances of her relation to, or familiarity with the Third Order or as to the necessity for application of the cy pres doctrine; but her gifts to the other religious entities represented substantially greater shares in her estate as then constituted. The will contained no residuary clause.

The bare, abbreviated '' amt in Banks '' phrase seems to us deficient enough, in respect of certainty and clarity, to require that it be examined in the light and context of decedent's other testamentary provisions and of the entire will; this test, together with proof of the surrounding circumstances, being properly resorted to, of course, in aid of interpretation.

The Surrogate considered, as has been noted, that the scheme and structure of the will evinced decedent's intent to list and dispose of all her assets; and in the will decedent indicated no expectation of receiving, and no intent to dispose of any property jointly held with her uncle, Mr. Killian. These conclusions seemed to the Surrogate, and logically so, to be buttressed by decedent's repeated references to Mr. Killian in subsequent provisions of the will, where certain dispositions of property were made in the expectation that he would, in fact, survive her. This is, of course, consistent with the testimony of the subscribing witnesses, both registered nurses, that decedent exhibited not merely normal apprehensiveness of the impending surgery but fear that she would succumb to it. The trial court's ultimate conclusion was '' that the decedent intended the ' amt in banks ' provision to be a specific bequest relating only to the bank account she owned individually upon the date of the execution of her will [the second account was discovered subsequent to the Surrogate's decision] and not to what she might thereafter acquire upon her uncle's death [and] that the decedent died intestate as to all her assets not specifically bequeathed in the instrument admitted as her will.'' Additional support for the Surrogate's conclusion is to be found in the circumstance that the appellants, who were the least favored of testatrix's legatees when the will was made, together taking about $900, would, by reason of the later massive accretions to

her estate in the form of the joint accounts and the trust account, become her principal legatees, should their claim to the additional savings accounts of some $62,200 be sustained. There is no indication that decedent intended such a result. Indeed, the will demonstrates much greater interest, in terms of monetary provision, in the relatives that she did name and the religious entities that she designated elsewhere in the will than in these two legatees of her then modest bank accounts.

The procedure followed by the Surrogate's Court and the substantive conclusions at which it arrived are amply supported by authority.

It is fundamental, of course, that the "prime consideration * * * is the intention of the testator as expressed in the will * * * gleaned not from a single word or phrase but from a sympathetic reading of the will as an entirety and in view of all the facts and circumstances under which the provisions of the will were framed." (*Matter of Fabbri*, 2 N Y 2d 236, 239-240, mot. for rearg. den. 2 N Y 2d 979; *Matter of Thompson*, 217 N. Y. 111, 114, mot. for rearg. den. 217 N. Y. 665.) Thus, in this case, the single phrase " amt in Banks ", although superficially broad and general, was quite clearly restricted by testatrix' intent as disclosed when the will is read as an entirety and in the light of the facts and circumstances attending its preparation and execution. Decedent's careful inventory of her assets and her omission of a residuary clause clearly indicate her intention to dispose of everything that she then possessed, and nothing more. She did not contemplate or intend the disposition of property that might or might not subsequently come to her from her uncle because she did not expect to survive him, as her references to, and provisions for him indicated, if, indeed, she expected even to survive the impending surgery. In such a case, it may become " important to consider whether the instrument was executed in anticipation of immediate death, or at a time when the testator was in the enjoyment of health and engaged in business enterprises. If he was dying, it may be assumed that he did not contemplate the acquisition of property ". (1 Davids, New York Law of Wills, § 570, p. 930, citing *Heck* v. *Volz*, 14 N. Y. St. Rep. 409, affd. 120 N. Y. 663.) There is no indication that testatrix considered or intended that what might otherwise be a gift of remembrance to a friend coupled with a modest contribution to a religious order, should attain the proportions of a small fortune, in which no other relative, friend or charity would have any share. The suggestion in the minority opinion that decedent undoubtedly knew of the existence of the Totten trust account and the

joint accounts when she made her will is without evidentiary support. In looking to decedent's intent in the light of the circumstances existing *at the time*, the Surrogate's conclusion is supported by ample authority. (See *Matter of Brann,* 219 N. Y. 263, 267; *Matter of Hoffman,* 201 N. Y. 247, 255; *Matter of Delaney,* 133 App. Div. 409, 411, affd. 196 N. Y. 530.) The dissenters seem not to recognize this rule when discussing the acts and occurrences of the ensuing year and when suggesting that when decedent transferred the accounts to her own name (as to which the record is far from clear) she was cognizant of the bequests of bank accounts made by her will. A testator's intention "is to be ascertained not by what occurred long after the execution of his will, but by what was, apparently, or presumably, in his contemplation, at the time he was making it." (*Matter of Hoffman,* 201 N. Y. 247, 255, *supra; Matter of Englis,* 2 N Y 2d 395, 404.)

The reference in the minority opinion to the presumption against intestacy also seems inapropos. If the decedent's intent is ascertainable from the entire will, read in the light of the attendant circumstances, as we believe it is, resort to presumptions may not be had. (*Robinson* v. *Martin,* 200 N. Y. 159, 164; *Adams* v. *Massey,* 184 N. Y. 62, 73.) Here, in any event, as in *Adams,* " the presumption against intestacy is met by the presumption against disinheriting the heir and assuming them to be of equal strength they neutralize each other " (p. 73).

Our discussion has treated the disputed bequest generally and without regard to its specific nature and classification. Passing to the question of its category, we agree with the Surrogate's holding that the bequest is specific. " A general legacy is a gift of personal property by a last will and testament, not amounting to a bequest of a particular thing or money, or of a particular fund designated from all others of the same kind. A specific legacy is a bequest of a specified part of a testator's personal estate distinguished from all others of the same kind." (*Crawford* v. *McCarthy,* 159 N. Y. 514, 518–519, mot. for rearg. den. 160 N. Y. 668; *Matter of Delaney,* 133 App. Div. 409, 412–413, affd. 196 N. Y. 530, *supra;* 7 Warren's Heaton on Surrogates' Courts, § 61, par. 3, pp. 398–400.) The bequest under consideration is within the latter definition. This being so, it seems clear beyond dispute that the second paragraph disposes of only the two bank accounts held in decedent's name at the date of the will, for, again to cite *Delaney* (*supra,* p. 413), " as to specific legacies, the rule is well established that a will speaks as of the time of its execution." (See, also, *Matter of Brann,* 219 N. Y. 263, *supra;*

*Wetmore* v. *Parker,* 52 N. Y. 450; *Matter of Morris,* 11 Misc 2d 457.)

The decree should be affirmed, with costs to parties filing briefs, payable from the estate, and the matter remitted to the Surrogate's Court for further proceedings, in connection with the completion of the judicial settlement or otherwise, not inconsistent with this opinion.

HERLIHY, J. (dissenting). The Surrogate found that the testatrix intended the subject provision of her holographic will to be a specific bequest of a certain bank account standing in her sole ownership at the time she executed the will and limited the bequest to the amount of such account at that time.

In view of the certainty of the Surrogate and the majority herein that the testatrix did not contemplate or intend the disposition of her jointly owned property, it should be noted that she made no such declaration at the time she executed her will and apparently at no time thereafter. From the present record it is impossible to know exactly what this testatrix intended and the problem facing the court is to ascertain her most probable intention. For this reason there is resort to the language of the will itself and to the conduct of the testatrix regarding the will. Because of the majority's reference to the possibility of taking something away from this testatrix' collateral heirs, it should also be noted that a substantial portion of this estate (stocks) passes by intestacy regardless of the bank accounts and that the consideration of blood-kin is not too strong where such kin are neither descendants nor ancestors.

The bequest of " amt in banks " is specific insofar as it is a gift of only so much of the assets of the testatrix as are bank accounts. (See *Crawford* v. *McCarthy,* 159 N. Y. 514, 518, 519.)

The issue below and argued on this appeal is not the question of general or specific bequests in the abstract, but rather whether or not the testatrix intended to convey all bank accounts as she owned or had a joint interest in at the time of the execution of the will, together with any subsequent bank accounts she might own at the time of her death.

An examination of the subject paper writing shows that she apparently effectively bequeathed all of her then assets other than bank accounts and this is conceded by the respondents on this appeal. As stated by the respondents: " Not only is the intent shown in the Will to dispose of all the property she owned at the time of the making of the Will, but it is clear from the Will that there was no residue at the time to dispose of."

"The testator's intention as gathered from the will is, of course, controlling and, in seeking it, we must give to his words their natural and ordinary meaning." (*Matter of Gautier,* 3 N Y 2d 502, 508.) There can be no doubt that this testatrix fully intended not to die intestate and this conclusion is buttressed by the strong presumption against intestacy. The paper writing may have been hastily drawn, as found by the Surrogate, but such a fact does not necessarily imply that her intentions were hastily arrived at. The fact that she apparently felt that the joint tenant in the bank accounts would survive her is of no particular consequence since in all instances a testator has no way of knowing who is going to die first.

There is no reason for not giving effect to the intention of this testatrix to die testate in regard to bank accounts. "Circumstances surrounding a testator at the time of the execution of his will may be given in evidence so that the court may see the facts as he saw them, and thus arrive at his intention, *where the language alone is of doubtful import.*" (*Morris* v. *Sickly,* 133 N. Y. 456, 459; emphasis supplied.) In the present case the record shows that this testatrix intended to die testate and the language does not appear to be of "doubtful import". The use of the general phrase "amt in banks" is to be contrasted with the specificity of other bequests, e.g.:

"5. 100 Ford stock to Franciscan Far East Missions.

"6. 50 Steel, after my expenses are taken out, to Sacred Heart Program."

While the question of intention relates to the time of making the will, the actions of the testatrix after such time are consistent with an intention to bequeath all of her bank accounts as of the date of her death and in view of the short period of time involved, it would be improper to ignore such facts.

The testatrix lived for one year following the making of the will during which period her uncle died and she became the executrix of his estate and the sole owner of joint savings accounts, which accounts were closed and the funds thereof transferred to accounts in her name. Taking the finding of the Surrogate that the testatrix was "an intelligent, erudite woman", it seems almost conclusive that when she changed the joint accounts to her sole account she was cognizant of her own will made a short time before which bequeathed the "amt in banks" (such words are unlimited as to terms and conditions) to designated beneficiaries. As noted by the majority such language is "superficial", but all language is to the same extent superficial.

Assuming that the reasoning of the Surrogate should be accepted as to limiting the gift to those accounts in the sole own-

ership of testatrix, it does not follow that her intention was to limit the amount or value thereof as to require after-acquired benefits to pass in intestacy. " A [bequest] * * * universal in its terms, would carry after-acquired [property] * * * without language pointing to the period of testator's death " (*Carley* v. *Harper,* 219 N. Y. 295, 304). As to after-acquired property, " intention " means that the testator foresaw " the possibility of his becoming possessed of other property ". (1 Davids, New York Law of Wills, § 566, p. 924.)

In the present case the testatrix undoubtedly was aware that she might become the sole owner of the joint bank accounts and when that did occur, she then had approximately one year to overcome or meet " the dual contingencies that she might survive the operation and her uncle ".

Giving consideration to the making of the will, the happenings during the one year ensuing period and the fact that the testatrix intended to dispose of all of her property, it seems more logical to say that " amt in banks " means all such accounts at the time of the execution of the will and any subsequent accounts that she might thereafter open in her name. To give any other meaning would put a strained and unrealistic interpretation upon the words which are not ambiguous in their meaning to a layman and which would result in that part of her estate being intestate. (See *Matter of Warren,* 13 A D 2d 269, 274, revd. 11 N Y 2d 463, 468.) " A construction resulting in intestacy should, if possible, be avoided." (*Hutchings* v. *Hutchings,* 144 App. Div. 757, 759, affd. 210 N. Y. 539.) " There is always a presumption that the testator did not contemplate intestacy, and a construction that will result in even partial intestacy is not to be adopted, if a different construction is permissible." (*Simpson* v. *Trust Co. of America,* 129 App. Div. 200, 205.)

A comparison of the accounting papers with the will of the testatrix indicates that by virtue of the shares of stocks acquired by the testatrix subsequent to the will and prior to her death, the heirs at law of this testatrix will receive by intestacy an additional gross sum of about $64,000. While I do not agree that at the time this will was made, the bequest to the appellants was limited to the accounts then in the *sole* name of the testatrix, it is to be noted that if the interest of the appellants has as a result of the general language increased to a small fortune, the interest of the heirs at law has increased to the same extent.

The contention of the appellant Erica Brooks that this language constituted a gift also of all items in the bank safe-deposit boxes (in effect, the residue of the estate) cannot be sustained on either the law or the facts in this case.

The decree should be modified by providing that all bank accounts owned by the testatrix at the time of her death are to be paid to the appellants, share and share alike.

GIBSON, P. J., REYNOLDS and AULISI, JJ., concur in *Per Curiam* opinion; HERLIHY and GABRIELLI, JJ., dissent and vote to modify, in an opinion by HERLIHY, J.

Decree affirmed, with costs to parties filing briefs, payable from the estate, and the matter remitted to the Surrogate's Court for further proceedings, in connection with the completion of the judicial settlement or otherwise, not inconsistent with the opinion herein.