[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 14 
The difficulty in this case consists in construing the will of the testator. It contains provisions which *Page 16 
are inconsistent and irreconcilable with each other. Two distinct purposes appear in different parts of the instrument. One is that, on the death of each of the eight devisees or beneficiaries named in the residuary clause, his or her share of the real estate shall be sold and the proceeds divided. The other is, that the executors take possession of and lease out all the real estate of the testator (except the land devised to his son Henry) from time to time until the death of the testator's last surviving child, and receive the rents, and, after deducting expenses, pay over the surplus of the rents annually to the testator's seven children and grandchild, or to such of them as may be living, and the heirs of those who may have died leaving lawful issue.
The testator also directs that his real estate be not divided during the lives of his children or the survivor of them. The direction to sell the share of each beneficiary at his or her death can be reconciled with this prohibition of a division by regarding such direction to sell as a qualification of the prohibition; but it is impossible to reconcile such direction to sell and divide the proceeds with the subsequent clause, vesting a trust in the executors to receive and pay over the rents.
By this first clause the executors are directed to take possession of and lease out all the real estate of the testator (with one specified exception) from time to time until the death of the last surviving child. This language, taken by itself, is clear and free from ambiguity. It cannot be construed to mean that part of the land is to be sold and the residue leased from time to time. All is directed to be kept under lease till the death of the last surviving child. Such is the apparent import of the language; and to hold otherwise would be to attribute to the testator an unreasonable intent, which will not be imputed by implication. To construe the clause as meaning that each time a child dies the leases and trust are to terminate as to one undivided share, and that that share is to be sold, but no division of the others is to be made, would be to impute to the testator the design of *Page 17 
creating a trust most difficult of execution, and one under which it would be impracticable to obtain a fair rental. No indefeasible term could be demised in any part of the property. Every lease given by the trustees would be subject to be defeated in part by the death of any one of the beneficiaries. It would thereupon be the duty of the executors at once to sell the undivided share of the one dying, and the purchaser would be entitled to partition. No one would pay for so precarious a tenure a sum equivalent to the annual value of the property. The language used by the testator does not justify the supposition that he designed incumbering his estate with so ruinous a trust; but shows that he intended that the executors should lease all the property, and receive the rents of the whole until the death of the last surviving child. If it were possible to entertain any doubt upon that point it would be dispelled by reference to the directions given by the testator in respect to the rents. The executors are directed to pay them annually to the children and grandchild, or to such of them as may be living, and the heirsof those who may have died leaving lawful issue. The trust is thus expressly continued as to the shares of those who may die. The executors are, notwithstanding the death, to continue to receive and pay over the rents of those shares. This provision is sought to be reconciled with the direction to sell, by regarding the direction to pay rents to the heirs of deceased children as applicable only to such rents as might have accrued before the death of the child, or the actual sale of his or her share, pursuant to the power. But the language will not bear that construction. The trust is to receive the rents of all the real estate, and, after deducting expenses, to pay over the surplusannually to the living children and the heirs of those deceased. The payments to the heirs of deceased children are directed to be made annually pari passu with the payments to surviving children.
If the language of the clause in question were fairly capable of being construed either way, it would be the duty of the court to prefer the construction which would render the *Page 18 
will legal. "If words have a double intendment, and one standeth with law and the other is against law, they are to be taken in the sense which is agreeable to law." (Shep. Touch., 80; Co. Litt., 42 a.)
But it is only where a word or clause is fairly capable of a double meaning that the effect of either construction on the validity of the instrument is a legitimate consideration. Where the meaning of the testator is apparent from the language used, the plain import of the language cannot be departed from, though it result in rendering the will invalid. In Lord Dungannon v.Smith (12 Cl. Fin., 599), PARKE, B., forcibly asserts this principle. He says: "Our first duty is to construe the will; and this we must do exactly in the same way as if the rule against perpetuity had never been established, or was repealed when the will was made; not varying the construction in order to avoid the effect of that rule, but interpreting the words of the testator wholly without reference to it. When the words are construed, the rule of law against perpetuity is to be applied;" and Lord KENYON, in the Earl of Hardwicke v. Douglas (7 Cl. Fin., 815), says: "If there be any ambiguity, it is the duty of the court to put that construction upon the words which seems best to carry the intention into effect. But if there be no ambiguity, however unfortunate it may be that the intention of the testator should fail, there is no right in any court of justice to say that these words shall not have their plain and unambiguous meaning."
The clause directing the executors to take possession and to receive and pay over the rents must be construed according to the plain import of its language, notwithstanding any illegality in the testator's dispositions which may result from such a construction. It is conceded on both sides that, if valid, the legal effect of the clause was to create a trust, and to vest the legal estate in the executors during the continuance of the trust, notwithstanding the preceding devise in form directly to the children and grandchild. (Brewster v. Striker, 2 Comst., 19; Leggett v. Perkins, 2 id., 305.) *Page 19 
It is equally clear that if the intention was to continue the trust as to the whole property until the death of the last surviving child, there was an illegal attempt to suspend the power of alienation during seven lives. (Coster v. Lorillard,
14 Wend., 265; Hawley v. James, 16 id., 61.)
Both parties have sought to reconcile the trusts with the preceding direction to sell the share of each beneficiary at his or her death. The effort, on the part of the appellant, has been to make the trust agree with the power of sale by construing the trust so as to terminate as to one share on the death of each beneficiary, while the effort, on the part of the respondents, has been to make the power of sale agree with the trust by construing the power as applicable only to the ultimate reversion after the expiration of the trust.
We cannot adopt either of these theories; for the reasons already stated we think the language contained in the clause creating the trust incapable of any other construction than that the executors are to hold all the property in trust until the death of the last survivor of the testator's children; and that, on the death of either of them, the share of rents which such child would have received, if living, is to be paid annually to his or her heirs till the last survivor of the testator's children dies; while the language of the power of sale clearly indicates that what was intended to be sold on each death was one-eighth part of the property itself, of the fee in possession. The power to sell follows immediately upon a devise of the whole real estate to the seven children and the grandchild, share and share alike. The shares thus created were the things intended to be sold. The proceeds of each share are directed to be divided among the heirs of the party dying. It would be far too strained a construction to hold that the testator intended to authorize the sale of only a remote reversion, unsalable in its character and of extremely uncertain value; thus making such a fanciful division between the usufruct and the fee as would be destructive to the value of the property. The clear meaning of the language was that a fee in possession in one-eighth of the property should be *Page 20 
sold and be converted into personalty on the death of each devisee, and that the proceeds should go to his or her heirs in place of the land.
There is no evading the difficulty which arises from the manifest inconsistency between this provision and the subsequently created trust of the whole property. All efforts to reconcile, by construction, clauses so radically repugnant to each other are futile, and lead to results which could not have been intended by the testator and are not warranted by any language he has used.
The general scheme of the testator clearly appears to have been that his children and grandchild should during their lives each enjoy one-eighth of the income of his estate; that the executors should have the possession and charge of the property, and distribute the net rents. It is also evident that the testator desired to keep the property undivided until the death of his last surviving child. But whether he intended to qualify this by providing that on the death of each child one share should be sold and the proceeds divided as directed in the first part of the will, or that such share with the others should continue in trust and the income be paid annually to the heirs, of the child dying, until the last survivor of the children should die, as provided in the latter part of the instrument, is the point to be determined. The testator has declared both intents in language plain and unambiguous in itself, and I see no solution of the difficulty except by the application of the rule that when two clauses in a will are irreconcilable, so that they cannot possibly stand together, the one which is posterior in position shall be considered as indicating a subsequent intention, and prevail, unless the general scope of the will leads to a contrary conclusion. (Morrall v. Sutton, 1 Phill., 545; Sherratt v.Bentley, 2 My. K., 149, 161, 165; Pratt v. Rice, 7 Cush., 209; Evans v. Hudson, 6 Ind., 293; Sims v. Doughty, 5 Ves., 247; Constantine v. Constantine, 6 id., 100.)
It is true that this rule is only a last resort, to be availed of when all efforts to reconcile the inconsistency by construction *Page 21 
have failed. There are but few instances of the application of the rule, the courts having almost always succeeded in reconciling the clauses or gifts alleged to be inconsistent; but they recognize the existence of the rule and the necessity of its application in a proper case. (16 N.Y., 83; 2 Paige, 122; 9 id., 124; 38 Penn. State R., 314; 53 id., 106; 4 Mass., 215.)
It seems to us that this is a proper case for the application of the rule. Notwithstanding the benefit which we have had of the suggestions of learned counsel on both sides, we have failed to discover any satisfactory theory upon which to reconcile the clauses in question. If the trust, as understood by us, were valid, there can be but little question that the direction to sell would be rejected and the directions of the trust clause enforced. But though the trust clause be void by reason of its creating an unlawful perpetuity, and cannot therefore operate as a devise, it must nevertheless be retained and considered for the purpose of ascertaining the intentions of the testator; and for this purpose it is as effectual, and its operation upon other clauses of the will is the same, as though no legal obstacle existed to its being carried into execution. (Van Kleeck v.The Dutch Church, 20 Wend., 457; S.C., 6 Paige, 612.) In the case cited the devise was void by reason of the incapacity of the devisee to take, but the principle of it applies equally where the devise is inoperative by reason of its being in violation of some rule of law. (Tregonwell v. Sydenham, 3 Dow., 194;Cooke v. Stationers' Company, 3 My. K., 262; Singar v.Carroll, 3 Harr. McH., 333.) The clause, though ineffectual for the purpose of passing the property, cannot be obliterated from the will when searching through it for the purpose of ascertaining the intentions of the testator (20 Wend., 470, 471, 490); the intent of the testator, that the whole property should be held by the trustees intact, and the income only distributed till the death of the last surviving child, being irreconcilable with an intent that any part of the land should be sold and the proceeds divided before that event, and the trust to hold being, *Page 22 
by reason of its posterior position in the will; deemed the latest intent of the testator, the illegality of such later intent does not impair its effect in neutralizing or revoking the preceding direction to sell.
The testator must be deemed to have been ignorant of the illegality of the trust, and to have intended that it should be performed, and this precludes the presumption that he could have intended a different disposition of the property.
The argument that a testator is to be presumed to know the law, and that this presumption is to govern in passing upon the effect of an illegal disposition, as bearing upon the question of his intentions, was presented in the clearest manner by COWEN, J., in the case of Van Kleck v. The Dutch Church (20 Wend., at page 480), but was most distinctly rejected by the prevailing opinions and the judgment in that case.
On a reading of the whole will there is strong ground for holding, without reference to the relative positions of the provisions in question, that the main intent of the testator was that the ultimate division of the property should not take place until the death of his last surviving child, and that in the meantime the possession and management of it should be confided to the executors. The interjected direction, to sell a share on the death of each devisee, confuses this general scheme. It cannot be denied that from that provision and from the terms of the trust an intention is disclosed, either that the issue of each child should, on the death of its parent, succeed to the proceeds of a sale of a share corresponding with that parent's interest in the income, or to the parent's right to receive a share of the income from the trustees until the death of the last surviving child of the testator. But it is impossible that both of these intents should be effectuated. The latter one seems most consonant with the general design of the testator; and if this were sufficiently clear, it would not be necessary to resort to the interpretation founded upon the relative positions of the clauses. Both modes of interpretation, however, lead to the same result and defeat the *Page 23 
power, and render the trust attempted to be vested in the executors invalid. It is a single trust, embracing the whole property in dispute, and the other dispositions undoubtedly had reference to it. We are not at liberty to conjecture whether, if he had known that the executors could not take possession of the estate and lease it out during the lives of the beneficiaries, the testator would or would not have made so different a disposition of the property as would result from striking out the trust and retaining the other provisions of the will. Under these circumstances we think that all the dispositions of the residuary clause failed, and that the land descended to the children and grandchild of the testator as his heirs-at-law. (Coster v.Lorillard, 14 Wend., 265; Hawley v. James, 16 id, 61, and cases cited therein.)
We have not alluded to the proceedings in partition to which the plaintiffs were not parties, nor to the attempt to extinguish the power of sale by means of the conveyance from the executors, not made in conformity with the power, because these matters have had no effect in leading us to the conclusion at which we have arrived.
The judgment should be affirmed, without costs.
All concur.
Judgment affirmed.