## SUPREME COURT.

WILLIAM A. LOTTIMER *et al.* agt. JANE C. BLUMENTHAL *et al.*

*Construction of will — Remarriage of widow of testator — Repugnancy —*
*Rejecting words.*

The testator, after making various devises, directs his executors, in the eighth clause of his will, to pay the residue of the net annual income of the estate to his wife, during her life or until she should *remarry ;* but in case she should *remarry* she was to have an annual income which was to be readjusted, and she was to receive it during her life, for her sole and separate use, free from any debts or control of her husband. In the tenth clause the testator directs that, upon her death or *remarriage*, all the estate was to be divided between his children and their issue:

*Held,* that the word "remarriage" occurring in the tenth clause was inadvertently and unintentionally used by the testator as an event which would cut off rights in others and hasten the division of the estate, and that the words should be rejected as irreconcilable with the general scope of the will, and as in conflict with the expressed intentions of the testator, both general and special, as shown by the will itself.

*Special Term, May,* 1881.

THIS is an action by the executors and trustees under the will of William Lottimer, deceased, for the construction thereof.

The testator died in the year 1876, leaving a large estate. He left as his survivors his widow, Jane C., and five children, all of age, except a daughter Mary.

The clauses or parts of the will more immediately concerned in this controversy are the eighth and tenth paragraphs.

The widow of the testator remarried with Charles E. Blumenthal in the year 1880 ; and the difficulty which brings the will into court is in the construction of the provisions directing what shall be done upon the happening of this "remarriage."

In the preliminary portion of the will, the testator bequeaths to his wife his furniture, pictures, &c., with a power to his executors, upon her death, to sell the same and invest and divide the proceeds thereof in the manner directed in his will in respect to the residue of his estate and property. Afterwards, the testator provides for the setting aside of securities to produce an annual income for his sisters and nieces, and directs that upon the death of these persons severally, the principal sum of these securities shall become part of the residue of his estate. There are other specific provisions which are not important to be considered in this connection.

The eighth subdivision of the eighth clause provides as follows: "My said executrix, executors and trustees shall, after the payment to my children of their aforementioned annual incomes, from the said net annual income of my estate, pay all the rest and residue of said net annual income to my beloved wife Jane Catherine Lottimer, during her life, or until she shall remarry, annually, from the time of my death. But in case she shall remarry, and the net annual income from my estate shall be — or shall be more than — $50,000, then a sum of such securities sufficient to yield a net annual income of $20,000 shall be set aside by my trustees and kept invested as aforesaid, and they shall collect and receive the said net annual income and pay the same over to my said wife Jane Catherine, annually, for and during her life, in quarterly payments, from the time of her marriage, upon her sole and separate receipt, and for her sole and separate use, free from any debts, engagements, or control of any husband she may have ; and upon her death the said principal sum of securities shall become part of the residue of my estate. But in case the net annual income from my estate shall, at the time of her marriage, be less than the sum of $50,000, then it is my will that the principal amount of securities to be set aside for her benefit, as aforesaid, shall be decreased to a sum the annual income from which shall be, as near as may be, proportionate to the net annual income last mentioned from my estate, and

Lottimer *et al.* agt. Blumenthal *et al.*

in proportion that $20,000 of income bears to $50,000 per annum."

The tenth clause of the will is as follows: "10th. Upon the death or *remarriage* of my wife, then my surviving executors and trustees shall divide all and singular my estate, real and personal, of every nature and description, into as many parts or shares as there shall be of my children then living, and the issue of such of them as may have died leaving issue, such issue, upon such division, to take *per stirpes* and not *per capita*, the part or share his, her or their parent would have been entitled to if living; and that they shall set apart or assign one of such shares for each of my children, and to the issue of such of them as may have died leaving issue, such issue to have only the respective share or shares his, her or their parent would have been entitled to if living. But, upon such division, the share of my son shall be twenty per centum more than any share assigned to each of my daughters."

*William H. Arnoux*, for plaintiff.

*Wm. F. MacRae*, for infant defendants.

*Elihu Root*, for Jane C. Blumenthal.

VAN VORST, *J.*— It is claimed on the behalf of the infant defendants, that the provisions made by the testator in the eighth clause of his will in behalf of his wife, in the event of her "remarriage," are so inconsistent with, as to be entirely revoked by the express directions and limitations contained in the tenth clause, which directs that upon her death or "remarriage" all the estate was to be divided between the children of the testator and their issue. The ground upon which this conclusion is placed is, that where the provisions of a will are irreconcilably repugnant, the latter provision must prevail.

It is, doubtless, the rule in the construction of wills, that where two clauses or gifts are irreconcilable, so that they can-

not possibly stand together, the clause or gift which is poste-
rior in local position shall prevail, the subsequent words being
considered to denote a subsequent intention (1 *Jarman on
Wills, p.* 472 [*5th Am. ed., Boston*]). But the rule which
sacrifices the former of several contradictory clauses is never
applied but on a failure of every attempt to give to the whole
will such a construction as will render every part effective
(*Idem,* 475). Such reasonable construction should be given
" *ut res magis valeat quam pereat.*" All parts of a will are
to be taken together in ascertaining its meaning, and no part be
rejected as inoperative, if the whole can reasonably stand
together (*Norris* agt. *Beyea,* 3 *Ker.,* 283). And the rule
above indicated — that the provision of a will which is poste-
rior in position, is an indication of a subsequent intention,
and must prevail to defeat anterior gifts — is inoperative when
the general scope of the will leads to a contrary conclusion
(*Van Nostrand* agt. *Morse,* 52 *N. Y.,* 12). In this regard, as
in all others, when construction is called for, the real intention
of the testator is to be gathered from the whole will; and
rather than that such intention should fail, inconsistent words
may be rejected.

Should the construction of the tenth clause of the will
which is urged upon the court by the learned counsel for the
infant defendants prevail, or such effect as claimed by him
be given to it — that the whole estate, upon the " remarriage "
of the widow, is to be divided up between the testator's
children — it would defeat the clearly expressed intentions of
the testator, both special and general, and the considerate pro-
visions he had intelligently made for his sisters, nieces and
wife, which were, by his express directions, to continue with
respect to them severally as long as they should live, or at
least should not terminate until her death. It would also
break in upon and seriously disturb the consummation of other
gifts and provisions carefully made, dependent, not upon the
" remarriage " but the " death " of the wife, which it is not
necessary here to enumerate. Such result could not, in con-

struction be accepted, except absolutely necessary. But limiting the inquiry to one subject — the remarriage of his wife — it will be seen that this event had been intelligently considered by the testator. In the eighth clause of the will this contingency was contemplated and provided for in harmony with the other provisions · of the will in her behalf and others'. By such remarriage his widow was not to be deprived of her proportion of the income of his estate; but, otherwise, on the happening of such event her share was to be readjusted and she was to receive it during her life, for her sole and separate use, free from any debts or control of her husband. If the provisions of the eighth clause are allowed to stand, the principal of the whole estate, out of which this income is derivable, cannot be divided up and given away to others until her death.

A full consideration of all the provisions of the will, and the contingency upon which — the death of his wife — other interests and rights are intentionally made to depend, in connection with the fact that the remarriage of his wife had been clearly contemplated by the testator, without disfavor, in the eighth clause of the will, and provision thereupon made in her favor based upon such fact, leads to the conclusion that the word "remarriage" occurring in the tenth clause of the will was inadvertently and unintentionally used by the testator as an event which would cut off rights in others, and hasten the division of his estate. If that word be dropped the whole will can be carried out, and the purposes of the testator effectuated as he clearly intended, and no interest will be sacrificed. The enjoyment of the principal, it is true, may be postponed until the death of Mrs. Blumenthal, but not ultimately defeated or impaired. Allowing this word to remain disturbs the well considered scheme in the testator's mind, both general and special, when he executed his will.

Words in a will are not to be expunged upon mere conjecture, but where they are irreconcilable with the general context they may be rejected, whatever their local position (*Jarman on Wills, vol.* 1, *p.* 480, *and cases cited*).

As a reasonably clear deduction that the word "remarriage" in the tenth clause was unintentionally, and through a mistake, used, appears from the direction that the division therein contemplated was to be made by the "surviving executors and trustees." This would seem to indicate that his wife, who was an "executrix" and trustee under the will, had died before the division was to be made. In previous portions of the will the testator had been careful to use the word "executrix" in connection with the words "executors and trustees" when duties were imposed, with respect to the management, care and appropriation of his estate. And this omission occurs in subsequent parts of the will with respect to the care and division of the estate, evidently based upon the fact of the death of his wife when the division contemplated by the tenth clause was directed to be made. I think it quite clear that the word "executrix" was in those instances dropped by the testator intentionally, for the reason that those things were only to be done after her death.

The conclusion reached is that the word "remarriage" found in the tenth clause of the will, should be rejected as irreconcilable with the general scope of the will, and as in conflict with the expressed intentions of the testator, both general and special, as shown by the will itself; and judgment is ordered accordingly.