vator service.   The plaintiff, for reasons which constitute no excuse, did not comply with its contract as to time, and did not complete either elevator until March 2d.   The lessee of the building, under the terms of his lease, refused to pay the rent for the month of February, amounting to $1,750.   Notwithstanding plaintiff's failure to complete its contract on time, the defendant did not exercise its right to terminate the contract for this reason, but permitted plaintiff to go on and complete the work.   The effect of thus permitting the plaintiff to go on and perform, notwithstanding its default as to the time of performance, is well settled.   The defendant thereby waived any right it might have asserted to plead the delay as a defense to an action for the agreed price.   Dunn v. Steubing, 120 N. Y. 232, 24 N. E. 315.   It did not, however, thereby waive its right to counterclaim for any actual damage it might have suffered by reason of the delay.   Granniss & Hurd L. Co. v. Deeves, 72 Hun, 171, 25 N. Y. Supp. 375.   Unless, therefore, the defendant in some way waived its claim for damages, it is still in a position to recover them.   We can find no evidence of such a waiver.   As has been shown, the mere forbearance to insist upon a forfeiture did not constitute a waiver.   Nor did the letter from defendants' attorneys, which is much relied on by plaintiff.   That letter was dated March 7th, after the first elevator had been installed, and, in terms, applies to an elevator not then installed, by which must necessarily have been meant the second elevator, concerning which no controversy exists.   The error into which the court below fell was in treating defendants' acquiescence in the completion of the contract as a waiver of damages for nonfulfillment, instead of only a waiver of any defense to a claim for the contract price.   Upon the case made, the plaintiff was entitled to recover the unpaid balance of the contract price, but the defendant, as against this, was entitled to recoup its damages, if any, suffered by reason of the unexcused delay in installing the first elevator.

The judgment must be reversed and a new trial granted, with costs to the appellants to abide the event.   All concur.

---

(43 Misc. Rep. 217.)

LADIES' UNION BENEV. SOC. v. VAN NETTA.

(Supreme Court, Trial Term, Tompkins County.   March, 1904.)

1. WILLS—INTENTION OF TESTATOR—EXTRINSIC EVIDENCE.
    To ascertain the real intention of a testator in disposing of his property, extrinsic evidence is admissible, where the will, in connection with the codicil, leaves his intention uncertain.

2. SAME—LETTER WRITTEN BY TESTATOR.
    Intention of testator in executing an obscure codicil may be shown by a letter written by him to his residuary legatees three days before he executed the codicil.

Action by the Ladies' Union Benevolent Society against John E. Van Netta, as executor of the will of Dwight McIntyre, deceased.   Complaint dismissed.

E. H. Bostwick, for plaintiff.
Tompkins, Cobb & Cobb, for defendant.

FORBES, J. This is an action brought under section 1819, Code Civ. Proc., to recover two legacies. The controversy arises over certain bequests made in the last will and testament of Dwight McIntyre, deceased. The clause to be construed reads as follows:

"After all my lawful debts are paid and discharged, I give and bequeath the income of One Thousand Dollars to Mrs. H. E. Ward, for and during her natural life and leave to my executors that amount to be well and securely invested, in good and permanent securities, and the income thereof paid to her annually, and at and after her death, I give, devise and bequeath the said sum of $1,000.00 to the Old Ladies Home of Ithaca. I give, devise and bequeath the income of One Thousand Dollars to Mrs. E. Plummer of Ithaca for and during her natural life and I leave to my executors that sum to be invested as above directed and the income thereof to be paid to her annually and at and after her death, I give, devise and bequeath the said sum of One Thousand Dollars to the Old Ladies Home of Ithaca."

After a specific devise to his sister Ann E. Van Netta of the homestead, and a bequest of $1,000 to his friend Perry C. Elsworth, the deceased gives the rest, residue, and remainder of his real and personal property to Ann E. Van Netta and John E. Van Netta, or the survivor of them. Then follows this clause:

"And I request them and the survivor of them, at their death, to remember that worthy and benevolent institution, the Old Ladies Home of Ithaca, as one worthy of their bounty and one in which I feel an especial and kindly interest."

The will is dated the 8th day of September, 1886. On the 15th day of May, 1888, the testator executed a codicil. The codicil reads as follows:

"Codicil to my Will dated September 8th, 1886. I revoke the legacy bequeathed to Mrs. H. E. Ward and the legacy to Mrs. E. Plummer and give and bequeath to Mary A. Holman the sum of One Thousand Dollars."

The plaintiff claims that this provision of the codicil does not revoke the legacies to the Old Ladies' Home, which is a part of the organization of the plaintiff corporation, to which, unless a revocation is intended by the testator, the sum of $2,000 must be paid.

The question arises, first, whether by the terms of the codicil it was the intention of the testator to cancel and revoke these legacies and the vested remainders after the life estate of the individuals to whose use the income of each bequest was to have been devoted. If there is no ambiguity nor any inconsistency in or conflict between the provisions of the will and the codicil, then the construction of these provisions, read together, must be determined by the court, without the aid of any circumstance or evidence aliunde to explain the intention of the testator. Van Nostrand v. Moore, 52 N. Y. 12; Pierpont v. Patrick, 53 N. Y. 591; Newcomb v. Webster, 113 N. Y. 191, 21 N. E. 77; Redfield v. Redfield, 126 N. Y. 466, 27 N. E. 1032; Viele v. Keeler, 129 N. Y. 190, 29 N. E. 78; Kinkele v. Wilson, 151 N. Y. 269, 45 N. E. 869; Goodwin v. Coddington, 154 N. Y. 286, 48 N. E. 729; O'Donoghue v. Boies, 159 N. Y. 96, 53 N. E. 537.

It follows, if, taking the whole will, and reading that with the codicil, the intention of the testator is left obscure and uncertain, then it is competent to resort to extrinsic evidence for the purpose of finding the real intention of the testator. Upon this theory a letter was introduced and

received in evidence upon the trial. The letter does not attempt to make a new will. It does, however, explain the intention of an obscure provision of the codicil subsequently made. The intention may properly, in part, at least, be drawn from the provisions of the will and the codicil read together. The deceased was an unmarried man living in the city of Ithaca, no doubt deeply interested in the charitable institution governed and managed by the plaintiff corporation. The Old Ladies' Home then existed and was largely made possible through the charities of Jane B. McGraw, who deeded to the plaintiff society the real estate now used for that purpose. After giving the residue and remainder of his real and personal property to his sister and her husband, the testator called their attention to his interest in the home, and, by a very strong suggestion, made a request in his will that at least a portion of his property might well be devoted to that charitable use. By the first provision in his will, it is true, he gave a life interest to Mrs. Ward and to Mrs. Plummer, with the remainder over to this branch of the plaintiff corporation. But by the provision in his codicil he seems to have confounded the bequest of the income of the $2,000 provided for in his will with the bequest of these legacies in remainder, over to the plaintiff corporation, first, by revoking the legacies instead of the income; then bequeathing in the same clause $1,000 to Mary Holman, absolute. The provisions of the will and the codicil are certainly inconsistent, and it is doubtful whether taken together they express the true intention of the testator.

The defendant is the survivor of Ann E. Van Netta, the deceased sister of the testator. He produced upon the trial a letter purporting to have been written by the deceased on the 12th day of May, 1888, three days before the execution of the codicil in question. The letter reads as follows:

"Ithaca, New York, May 12, 1888.

"To my sister, Ann E. Van Netta and her husband J. E. Van Netta: I made a will and left it in the care of Judge Elsworth. I intend to change it before going on my trip west. The bequest I gave to Mrs. H. E. Ward and to Mrs. E. Plummer I shall cancel and both bequests will come back to the estate. I will give to Mary Holman $1,000.00 and at any time you think best you can give the Old Ladies Home a bequest, but I request you not to give the Chamberlains one dollar.          Dwight McIntyre."

Without this explanation, the intention of the testator is very doubtful. If the letter produced is competent evidence, as a declaration of the deceased's intention, then that provision in the codicil is made plain. It certainly looks as though it was the intention of the deceased to revoke both legacies, as well as the use and income from the same, to the beneficiaries named in the first clause of the will. It can hardly be supposed that this intention was not in his mind when he speaks of those legacies, and then proceeds to give one-half of the whole amount so bequeathed to Mary Holman, an entirely different person. This intention on the part of the testator is further disclosed by another clause in the produced letter, in which he again refers to his interest in the Old Ladies' Home, and leaves it discretionary with his residuary legatees to carry out his object, by the following reminder: "I will give to Mary Holman $1,000.00, and at any time you think best you can give the Old Ladies Home a bequest." I am forced to the conclusion that it was the

intention of the testator to revoke the legacies and the remainders given in his will, leaving it to the discretion of his residuary legatees to act for him in case they, or either of them, should survive him.

While this court would be only too glad to give an interpretation to the will and the codicil aiding this very worthy charitable institution to hold the benefit of these bequests, still, from the evidence, I am forced to the conclusion that it was the intention of the testator, disclosed by the circumstances and the instruments themselves, to place these bequests in the residuary clause, and give Mrs. Holman a legacy of $1,000 instead. The complaint must therefore be dismissed.

Judgment accordingly.