JAMES C. CALLAHAN and Another, Plaintiffs, *v.* WILHELMINA VOLKE and Others, Defendants.

Supreme Court, Sullivan County, July 28, 1926.

Wills — construction — will gave widow property subsequently conveyed by her to defendant together with all household furniture, chattels and " all mortgages, money and effects owned "— codicil subsequently executed confirmed said gift to widow, giving her both real and personal property for her sole benefit and use with power to sell or convey same — codicil then directed that upon widow's death remainder, both real and personal, should be given to niece " for her sole use and benefit absolutely "— testator intended to limit to widow use of some of his property for life with beneficial power of disposition, with remainder over to his niece — will and codicil must be construed together — widow acquired absolute title to premises conveyed with contents thereof — plaintiffs' complaint in action to cancel of record conveyance from widow to defendants dismissed.

A will by which one of the defendants grantors was given a dwelling house and lot, in which she and her husband resided, together with all the household furniture, chattels and " all mortgages, money and effects owned " by her husband, to which a codicil was thereafter executed in which a gift to said widow was confirmed both as to real and personal property " of every name, nature and kind whatsoever for her sole use and benefit with full power and authority to dispose of, sell and convey the same," but which in a second paragraph directed that upon said widow's death the remainder of the property, " both real and personal of every name, nature and kind whatsoever," was given to testator's niece for " her sole use and benefit absolutely," must be construed as evidencing an intention on the part of the testator to limit to his widow the use of some of his property for life with a beneficial power of disposition with remainder over to his niece. The will and codicil must be read and construed together so as to form a consistent whole if possible, and upon an examination of both it must be held that the testator gave to his widow the home and contents thereof absolutely with the right to dispose of it in her lifetime.

Therefore, plaintiffs' complaint in an action to cancel of record a conveyance made by said widow to defendants herein on the ground that the widow merely had a life use with power to dispose of the property and on account of her mental condition she was unable to make such disposition must be dismissed.

MOTION to dismiss complaint on the ground that it does not state facts sufficient to constitute a cause of action.

*William Deckelman,* for the plaintiff.

*Henry F. Gardner,* for the defendant Volke.

ROSCH, J. In the year 1904 George Wind died the owner of the real property described in the complaint, which consisted of a house and lot situated in the village of Jeffersonville. Prior to his death he made and published a last will and testament and

codicil thereto, both of which have been admitted to probate. He left him surviving his widow, Philopena Wind, who died on the 14th day of February, 1926. Copies of the will and codicil of George Wind are set forth in the complaint. The will is dated July 20, 1896. It was not witnessed or published prior to the 15th day of December, 1904, when there was added to it an attestation clause reciting that on the 15th day of December, 1904, the testator published the will in the presence of the witnesses who at that time signed the same in his presence. The 1st paragraph of the will directed the payment of the debts and funeral expenses of the deceased, and the 2d paragraph thereof is in the following language:

" *Second.* I give, and devise unto my wife, Philopena Wind, the dwelling house and lot in which I now reside in Jeffersonville, Sullivan county, New York.

" I hereby give and bequeath unto my said wife, Philopena Wind, all household furniture plate, printed books, pictures and other works of art, chattels and effects which shall be in the house.

" Also all mortgages, money and effects owned and *possed* by me at my decease*d.*"

On the 15th day of December, 1904, the same day on which the will was witnessed, the testator signed, published and had witnessed a codicil. The codicil is as follows:

" CODICIL.

" This is a codicil to my last will and testament bearing date the 20th day of July 1896 as follows: I do hereby ratify, republish and confirm all the provisions of said will hereby giving and granting unto my said wife, Philopena Wind, all my property and effects both real and personal of every name, nature and kind whatsoever for her sole use and benefit with full power and authority to dispose of sell and convey the same.

" *Second.* On the demise of my said wife, Philopena, all the rest residue and remainder of my property, both real and personal of every name, nature and kind whatsoever I give, bequeath and devise to my niece, Margie Colahan, of the city of Philadelphia, Pa., to her sole use and benefit absolutely.

" *Lastly* I do hereby depute, constitute and appoint my said wife and Edwin A. Brand the sole executors of this my last will and testament hereby revoking all other and former wills by me made.

" *In witness whereof,* I have hereunto set my hand and affixed my seal this 15th. day of December, 1904.

" GEO. WIND [L. S.] "

At the end of the codicil is the usual attestation clause stating that the same was signed, sealed, published and declared by the testator as and for a codicil to his last will and testament bearing date July 20, 1896. The codicil was witnessed by the same witnesses as the will. One of the witnesses, Alpheus Potts, was an attorney.

On the 14th day of October, 1920, an instrument dated September 21, 1920, purporting to be a deed of the real property referred to, was recorded in the Sullivan county clerk's office. In this deed Philopena Wind appears as grantor and the defendant Wilhelmina Volke as grantee. The instrument excepted and reserved to the first party the use and enjoyment of the premises during her natural life, and was made on the further condition that the party of the second part should pay to the first party during her lifetime the sum of $224 a year in cash, which payment should cease and terminate at the death of the first party.

Margie Callahan (named in the codicil as Margie Colahan) was the mother of the plaintiffs, and the grandmother of the two defendants, Arthur C. Stull and James E. Stull. Margie Callahan died in January, 1918, and left the two plaintiffs and two of the defendants, Arthur C. Stull and James E. Stull, as her heirs at law. The plaintiffs claim that the deed recorded in the Sullivan county clerk's office, purporting to convey the premises from Philopena Wind to defendant Wilhelmina Volke, was procured by the defendant Volke through undue influence and fraud and without consideration. Plaintiffs further claim that for a period of at least ten years before the death of Philopena Wind she was of unsound mind, incompetent to manage her affairs, and incapable of comprehending the consequences of her acts at the time of the signing and execution of the deed. They allege that she was incompetent at the time of her death, and at such time was an inmate of a State hospital for the insane. Plaintiffs ask judgment that the defendant Wilhelmina Volke be barred from any claim or interest in the premises referred to, and that the instrument dated September 21, 1921, be canceled of record.

The determination of this motion will depend upon the construction of the will and codicil of George Wind, deceased. If by such will and codicil his widow, Philopena Wind, acquired an absolute title to the premises described in the complaint, then plaintiffs would have no interest whatever in the real property described. If, on the other hand, the will and codicil gave to the widow the life use with power to dispose of the property, and on account of her mental condition she was not able to make such a

47

disposition, or the deed in question was procured through fraudulent practices, and was not in law or fact a deed, then the plaintiffs would have an interest in the property.

The 2d paragraph of the will is an apparently absolute devise of a dwelling house and lot in Jeffersonville. Taken and considered alone, it must be construed as absolute. It is conceded that this particular property is the one involved in this action. The 1st paragraph of the codicil, using the language, "hereby giving and granting unto my said wife, Philopena Wind, all my property and effects, both real and personal, of every name, nature and kind whatsoever, for her sole use and benefit with full power and authority to dispose of, sell and convey the same," is also an apparently absolute disposition of both the real and personal property of the deceased. Such quoted portion from the codicil taken alone would have to be construed as an absolute gift of real and personal property. The question then presents itself: Is the language in the 2d paragraph of the codicil reciting that on demise of the wife, all the rest, residue and remainder of the property is given, bequeathed and devised to the niece, Margie Colahan, sufficiently broad or expressive to qualify the absolute devise as contained in the will, republished by the codicil and confirmed in the first portion of the codicil? The purpose of the 2d paragraph of the codicil is difficult to understand, in view of the disposition of all testator's property by the will, as well as by the 1st paragraph of the codicil. While it is true that the intention of the testator must be ascertained from the whole will taken together, which in this case includes both will and codicil, it is also true that where words of qualification are used, the words of qualification, which are urged to be those that limit an absolute devise or bequest, must be plain and explicit and as effectual as may be necessary to carry out the purpose.

In determining an intention little assistance can be had from reported cases. Each will is peculiar to itself. This will and codicil, written and published as they were, present a question which is difficult to determine. It is easy to say that the intention of the testator should control. It is difficult to determine what his intention was at the time the 2d paragraph of his codicil was framed for him and included in the instruments disposing of his property.

The circumstances under which the codicil was prepared and signed should be looked into and the reason for a codicil deduced, if possible. The original papers are not before the court. A reading of the will shows that it was prepared by a layman who had some idea as to the use of legal words and phrases. It uses the words "give and devise" as to the dwelling house and lot, and "give and bequeath" as to personal property. There are some words

misspelled, and the use of the separate clause, " Also all mortgages, money and effects owned and po*ssed* by me at my decease*d*," as well as the manner in which the will was dated, show that the instrument was prepared by someone not wholly familiar with the preparation of wills.  Whether it was signed on the day it was written cannot be absolutely determined.  It might or might not have been.  It was not witnessed until the 15th day of December, 1904.  The attestation clause was written by a lawyer, or someone familiar with the preparation thereof.  It was doubtless prepared by the witness Potts.  It contains these words: " sealed, acknowledged, executed and declared."  It is well to observe that it does not contain the word " signed " which word appears in the attestation clause of the codicil.  That difference may lead one to believe that the will was signed on its date and was witnessed on the date shown by the attestation clause.  The will, signed but not witnessed, was likely shown by the deceased to his lawyer.  Under the law it was not a valid testamentary instrument as to publication and witnessing.  The lawyer prepared an attestation clause to the will, which was signed by two witnesses (one of whom was the lawyer), and apparently at the same time he prepared the codicil. The codicil was properly signed, published and witnessed.  There was some impelling reason for the preparation, signing, publishing and witnessing of the codicil.  Such reason, in part at least, can be explained by the fact that in the original will no executor was named.  The first part of the codicil ratifies, republishes and confirms all the provisions of the will, and after so doing uses the language above quoted and referred to.  The 2d paragraph of the codicil is separately numbered and set forth, as quoted above. Concededly there is an apparent inconsistency.

The question then presents itself as to the purpose of the 2d paragraph of the codicil, and whether its inclusion therein was one of the reasons for the making thereof.  At the end of the 1st paragraph of the codicil these words are found: " For her sole use and benefit with full power and authority to dispose of sell and convey the same."  At the end of the paragraph numbered " second " the words used are: " To her sole use and benefit absolutely."  The words, " use and benefit with full power and authority to dispose of sell and convey the same," are words that might be limited to a power, while " absolutely," as used in the 2d paragraph, means unrestricted.  In the 2d paragraph of the codicil the use of the words, " on the demise of my said wife," can refer to nothing but the wife's death, and the words, " all the rest residue and remainder of my property," mean what was left, and in connection with the preceding phrase mean what was left when the wife died.  There

is nothing ambiguous, precatory or doubtful about the words used in the 2d paragraph of the codicil. The language is plain, and simple words are used for the disposition of property upon and after the occurrence of an event bound to happen. All the words have just as much certainty in their meaning and import as the words, " give, bequeath and devise," found in the same paragraph. The question is whether the 2d paragraph of the codicil can be wholly disregarded.

A reading and study of the codicil will disclose the fact that it is not wholly free from criticism. In the last paragraph two persons are named as " sole executors of this my last will and testament." And we find further the language, " hereby revoking all other and former wills by me made." Such language is at least unique in view of the first words of the codicil, which are the usual words ratifying, republishing and confirming a will, and the attestation clause reciting its publication as a codicil. That the will is involved and confused by the language of the codicil cannot be questioned. The language of the codicil itself is involved. It is urged by the defendant that the devise of the house and lot of the testator was an absolute devise, and the attempted gift over should be treated as a mere wish or desire, and that the original devise should not be limited by the 2d paragraph of the codicil.

The rule as to limitation of what appears as an absolute gift has often been asserted. (*Campbell* v. *Beaumont,* 91 N. Y. 464; *Farmers' Loan & Trust Co.* v. *Kip,* 192 id. 266; *Van Horne* v. *Campbell,* 100 id. 287; *Matter of Ithaca Trust Co.,* 220 id. 437, 442.) However, such general rule has been limited by recent decisions as well as by statute. In the case of *Tillman* v. *Ogren* (227 N. Y. 495, 502) the following language is found: " A gift to one followed by a gift to another of such part thereof as may remain at the decease of the first taker, can be enforced when the intention of the giver is clear and definite to limit the gift to the first taker to a life estate with power to dispose of the principal or any part thereof during his lifetime and to give to another such part of the principal as is not disposed of in the lifetime of the first taker. (*Seaward* v. *Davis,* 198 N. Y. 415.)

" The gift over after a gift that is apparently absolute is sustained because it is ascertained that it was not the giver's intention to make an absolute gift, but one qualified and limited by the subsequent or other provisions of the will or instrument creating the gifts. (*Leggett* v. *Firth,* 132 N. Y. 7.) The common-law rule governing repugnant gifts has been changed by statute. (Real Property Law [Cons. Laws, ch. 50], sec. 57; Personal Property Law [Cons. Laws, ch. 41], sec. 11.) "

The cutting down of an absolute gift of property must be by means of clear language and expressions regarded as imperative. (*Tillman* v. *Ogren, supra,* 505.) Here is what appears to be an absolute gift of property. The question then is whether the cutting down of such absolute gift is by language clear and imperative. The language of the 2d paragraph of the codicil is as clear as any language in the will or codicil. The intention of the testator was to limit to his widow the use of some of his property for life with beneficial power of disposition with remainder over to his niece. The will and codicil must be read and construed together (*Crozier* v. *Bray,* 120 N. Y. 366), and construed so as to form a consistent whole, if possible. (*Matter of Title Guarantee & Trust Co.,* 195 N. Y. 339; *Matter of Buechner,* 226 id. 440.) The codicil is the last testamentary expression, and the paragraph " second " is the last portion thereof attempting to make a disposition of property. The later expression of intention is sometimes shown by position or location in arrangement. (*Van Nostrand* v. *Moore,* 52 N. Y. 12.) Such rule is not absolute, and is a last resort of construction. (*Van Nostrand* v. *Moore, supra; Adams* v. *Massey,* 184 N. Y. 62.) It is referred to as a rule " harsh and drastic." (*Harrison* v. *Jewell,* 2 Dem. 37.)

The determination of the intention must control, and where there is an apparent inconsistency the whole instrument must be viewed and examined. (*Crozier* v. *Bray,* 120 N. Y. 366; *Tuthill* v. *Davis,* 121 App. Div. 290; *Seaward* v. *Davis,* 198 N. Y. 415, 419.)

The former holdings as to the invalidity of limitations upon gifts of real or personal property with life use and power of disposition were prompted by the common-law rule that an executory devise or bequest was void if the first beneficiary was given power of disposition. (*Tillman* v. *Ogren, supra,* 502; *Tuthill* v. *Davis, supra.*) Such rule was not an absolute one. (*Terry* v. *Wiggins,* 47 N. Y. 512, 518.) Such is not the rule now. (*Leggett* v. *Firth,* 132 N. Y. 7.)

The testator meant something by the 2d paragraph of his codicil. (*Smith* v. *Bell,* 6 Pet. 68; cited and approved, *Wager* v. *Wager,* 96 N. Y. 164, 173; cited and distinguished in *Campbell* v. *Beaumont,* 91 id. 464, 468.) If he meant anything it was the limitation of the estate of his wife in certain of his property so as to create for her a beneficial use with power of disposition. It could have meant nothing else.

The question then is whether the 2d paragraph of the codicil meant a limitation of the specific devise of the house and lot. It is not a question free from difficulty. It is clear that the codicil was a rewriting and reconstruction of the original will, which

never had any legal existence prior to its being witnessed. Such act occurred at the time the codicil was signed and witnessed. The instruments must be construed not only together but as executed and published at one time. The codicil is called " this my last will and testament " and revokes " all other and former wills by me made." Notwithstanding such words .(last quoted), in the attestation clause of the codicil we find the words " declared by George Wind as and for a codicil to his last will and testament bearing date July 20, 1896."

The purpose should be to adopt an interpretation which will give every part of the will and codicil some effect. If such purpose can be carried out, it should be done. (*Eidt* v. *Eidt,* 203 N. Y. 325, 330.) With such purpose in mind, and controlled by the primary rule of construction, can the specific devise of the house and lot be separated from the provision of the codicil showing an intention of testator that certain of his property shall pass to his niece after use and enjoyment by his wife? The will concededly was republished and confirmed in no uncertain language. There was some purpose in doing that, as well as in writing the 2d paragraph of the codicil. It is in an endeavor to reconcile the two that difficulty presents itself. If the two can be reconciled, then what may appear as inconsistent, on analysis, will be shown otherwise. An examination of the will shows a clear intention on the part of the testator to give to his widow the home and contents thereof. The devise and bequest thereof are absolute. In a separate sentence at the end of the will we find the following: " Also all mortgages, money and effects owned and po*ssed* by me at my decease*d.*" "All the provisions " of the will are ratified, republished and confirmed by the codicil. If any modification of the will was intended by the phrase in the fore part of the codicil ending " with full power and authority to dispose of sell and convey the same," it does not seem that it was intended as a modification of the disposition of the home and contents. The " provisions " ratified and confirmed must have meant the specific devise and specific bequest. The last portion of the will was separate and distinct, and consisted of a clause which was set apart as a sentence, and was not, in fact, a complete expression or direction but would have to be added to and read in connection with the previous sentence. The words " rest residue and remainder " in the 2d paragraph of the codicil have a well-defined meaning, and would not reasonably mean the specifically devised real property, with which we are concerned. Such clause ordinarily would dispose of the remaining portion of the estate, and the confusion here arises from the statement that it was given, bequeathed and devised

" on the demise " of the wife, and in that way has certain characteristics not ordinarily found in a residuary clause.

If the will is wholly disregarded, then the purpose of a codicil, its republishing of the will and confirming all the provisions thereof, cannot be explained. The only explanation that can be given is that the last clause of the will was disconnected and uncertain, and that the language in the 1st paragraph of the codicil, which is viewed as language limiting the disposition of property, or possibly explaining an intended disposition of property, was incorporated in the will for the purpose of making such limitation or explanation as to the mortgages, money and effects owned by the testator at his decease. Such language, commencing with the word " hereby " and ending with " power and authority to dispose of sell and convey the same," must be read in connection with the words, " ratify, republish and confirm all the provisions of said will " in the same paragraph. Furthermore, such language, viewed as limiting the disposition of property, or possibly explaining an intended disposition, could not, and would not, be viewed in that way except for the 2d paragraph of the codicil which makes that which would be absolute only apparently so. The 2d paragraph of the codicil would then refer to such portions of the testator's estate as were not specifically named and limited by the preceding phrase. A construction to the effect that there is a valid limitation created by the 2d paragraph of the codicil, and that it does not apply to the specifically devised house and lot, may appear as unusual. However, such holding does not bring about either the disregarding of the whole original will or the disregarding of the 2d paragraph of the codicil.

The practice of totally disregarding and excising is not resorted to, except in extreme and unusual cases, and then only when necessary. It is " only a last resort to be availed of when all efforts to reconcile the inconsistency by construction have failed." (*Van Nostrand* v. *Moore, supra,* 20; *Adams* v. *Massey, supra; Matter of Buechner,* 226 N. Y. 440.) In making such distinction as to the general property of testator, and that specifically devised and bequeathed, some difficulty presents itself on account of the use of the words " my property, both real and personal of every name, nature and kind whatsoever " in the 2d paragraph of the codicil. Such words last quoted must be read in connection with the words, " the rest, residue and remainder " immediately preceding. The intention of the testator was to exclude from the effect of such paragraph that which had been specifically disposed of. " My property " was not intended to mean the property given by him specifically to his wife, and clauses of a will should not be nullified

unless absolutely necessary. (*Harrison* v. *Jewell, supra; Roseboom* v. *Roseboom,* 81 N. Y. 356.) The positive character of the devise, its unqualified republication, and the words used in the fore part of the codicil being quite as confirmatory as qualifying, justify such a conclusion. The devising of the house and lot is clear, and the cutting down by the codicil does not apply to it. (*Banzer* v. *Banzer,* 156 N. Y. 429.) It can also be urged that a residuary clause is not in any way qualifying or repugnant to an absolute devise or bequest. Its purpose is to dispose of property which may be in the nature of residue. If there is no residue, it has no purpose. The main design of the testator, gathered from reading his will and codicil, was to make provision for his wife, and doubtless such design had impelling reason in so far as the disposition of the home and contents was concerned. The language in the 2d paragraph of the codicil does not contain any specific reference to property, although its language is quite inclusive.

The case of *Smith* v. *Bell* (*supra*) shows a close relation between the provisions of the will. The language was: " I give to my wife, Elizabeth Goodwin, all my personal estate whatsoever and wheresoever, and of what nature, kind and quality soever, after payment of my debts, legacies and funeral expenses, which personal estate I give and bequeath unto my said wife, Elizabeth Goodwin, to and for her own use and benefit, and disposal absolutely; the remainder of the said estate after her decease, to be for the use of the said Jesse Goodwin."

Jesse Goodwin was the son. The court held that the widow had a life estate with power of disposition. This case was distinguished by the Court of Appeals in this State, as referred to. (*Campbell* v. *Beaumont, supra.*) However, the ground of distinction as made at that time would not be justified now by the rules of law as above quoted. (*Tillman* v. *Ogren, supra.*) The distinction from the instant case is that the qualification and modification are clear. It is part of the same general thought and disposition and connected with it. In the *Tuthill Case* (*supra*) the language used is:

" *Third.* I give and bequeath all my personal property of every name and kind to my wife, excepting my piano, which I give to Lilly Corwin aforesaid.

" Whatever personal estate shall remain at the decease of my wife I give and bequeath to Buell Davis and Abagail Davis, the parents of my wife, or if they are not living, then to my sisters aforesaid and Lilly Corwin, share and share alike."

The same distinction can be made of the *Tuthill* as of the *Smith* case.

Both the last cited cases (the wills of which are in part quoted) are decided upon what is determined to be the intent of the testator. Nothing is taken out of the wills. If the 2d paragraph of the codicil in the instant case is construed as an intent to limit the specific devise and bequest of the will, then what was the intent of the testator when he republished the will? My conclusion is that he republished it for the purpose of confirming his specific devise and specific bequest, and that the purpose of the last portion of the 1st paragraph of the codicil coupled with the 2d paragraph was to limit the disposition of his property referred to in the last clause of his will, and that the language " all the rest residue and remainder of my property " in the 2d paragraph of the codicil meant only that portion that was not specifically devised or bequeathed. If it is urged that the separation is forced, some answers to that argument are, that the separation is made by the will itself, and its republication was not intended as an empty form; and that if it is held as contended by the plaintiffs, then the will has no existence, but the construction is limited to the codicil alone, because under such construction nothing would be left of the will.

Motion granted. Complaint dismissed, with ten dollars costs to defendant Volke.