In the Matter of the Final Accounting of HARRY T. GILL, as Executor of BERTHA B. WARREN, Deceased, Respondent. MICHAEL QUISH et al., Appellants; LOUIS JACOBSON et al., Respondents.

Third Department, June 16, 1961.

*Maider, Smith & Maider* (*Lydon F. Maider, Hugh H. Smith* and *Robert L. Maider* of counsel), for James P. Quish, appellant.

*George W. Cornell* for Michael Quish and others, appellants.

*T. R. & R. B. Haviland* (*Theodore R. Haviland, Roger B. Haviland* and *Dudley M. Ferguson* of counsel), for Harry T. Gill, respondent.

*Isaac Zaleon* for Louis Jacobson and another, respondents.

TAYLOR, J. Appeals by the distributees of the deceased from a decree of the Surrogate's Court, Fulton County, which construed certain provisions of her last will and testament.

One Bertha B. Warren died on May 14, 1959 leaving a properly executed will dated June 25, 1951 and a codicil thereto — not material to this controversy — bearing date April 27, 1955, both of which were duly admitted to probate on August 3, 1959.

Article Third of the will read: " All the rest, residue and remainder of my property and effects, whether real, personal or mixed, wheresoever situated, whereof I may be seized or possessed, or to which I may be in any manner entitled, or in which I may be interested at the time of my death, I hereby give, devise and bequeath to and as the absolute property of my friend, Harry T. Gill, of Gloversville, N. Y., whose personal receipt therefor shall be deemed and accepted as sufficient for the discharge of all interests passing hereunder.

" The property last herein referred to is to be received, held and distributed in accordance with a letter of instructions accompanying this will, together with possible alterations thereof subsequently to be made either in writing or orally, and in carrying out my wishes in such distribution of my estate I hereby delegate all necessary powers, both discretionary and otherwise, to said Harry T. Gill, in whom I hereby place this confidence."

About 1956 the testatrix, then confined to a hospital as the result of injuries sustained in a fall, handed Gill, her long-time friend who had managed her affairs in the latter years of her life under a power of attorney, an envelope addressed to him which contained the names and residences of her relatives and the following letter:

April 26th 55

My dear Mr. Gill

As you have my will and power to dispose of any thing I own after funeral expenses and Masses are said I would like the following friends remembered

Father Bakers Home of Charity

| 200 dollars | St Anns Church Wells |
| 200 dollars | Amy Earley Speculator |
| 200 dollars | for her kindness to me |
| 100 | Laura Nolan Speculator |
| 100 | Marguerite Fancher 21-1st Ave |

I also want to leave to the Servants of Mary Chicago 90

800      P o Box 55 Ill. Father Jerome

or 1000 dollars for the education of young priests.

(Signed) Bertha B. Warren.

John Finucan have a deed to a lot in Wells Cemetery but if more convenient in Johnstown and deed the lot back to Wells Church

over

If one or two thousand is left send it to Anne Quish
Knocklong
Eire
Co. Limerick

and notify Mr. Eugene Warren
10 Westover Road
Troy, N. Y.

Subsequently, further instructions were given him orally by the decedent in respect to the disposition of her property of which he made the following written memorandum in her presence and with her approval:

| 100 | Ann Barnette Mayers | | |
| | Agnes Page | 200 | |
| | Mildred Aird | 200 | |
| Mary Alice | | 500 | |
| Colbert | | 500 | |
| 500 Hubert W | | | |
| Give Ruth Gunneson | | something | |
| Give Maguerite Fancher | | 500. | |
| Little niece — something Skiptom Victoria, Australia | | | |
| nephew James Quish | | | |
| favor Mary Alice C. | | | |

It is conceded that the unattested letter and the oral instructions cannot be incorporated in the will by reference or regarded as testamentary dispositions. (Decedent Estate Law, § 21; *Matter of Fowles,* 222 N. Y. 222, 232.) They were admissible, however, as extrinsic evidence bearing upon the intention of the testatrix. (*Matter of O'Hara,* 95 N. Y. 403.)

The court below determined '' that the provisions of the second paragraph of Article Third of the Will of the deceased are precatory only and that the first paragraph of Article Third makes an absolute gift to Harry T. Gill of all of the rest, residue and remainder of the property of the testatrix ''.

We think that the Surrogate has misconceived the intent of the testatrix. The second paragraph of article Third of the will first directed that her residuary estate — unqualifiedly given to the named legatee by its previous paragraph — was '' to be received, held and distributed '' by him in accordance with her written or oral instructions. Her above-quoted chosen words are commanding and not optative. They express the classic purposes of a trust instrument and define the basic duties traditionally imposed on a trustee. She then delegated to Gill '' all necessary powers '' to effectuate her testamentary scheme. Had she intended to make an outright personal gift of her residuary estate to him, such empowerment would have been both unnecessary and superfluous. The concluding clause of

the paragraph — similar to that frequently inserted in testamentary documents — was but a post-death admonition to the selected representative of her faith that he would execute the purposes of her will. Such language is not necessarily inconsistent with a trust relationship. (*Forster* v. *Winfield,* 142 N. Y. 327.)

Thus, the intention of the testatrix to create an imperative trust of her residuary estate and to constitute Gill the agent by which its disposition would be accomplished accordingly is disclosed by the instrument itself. (*Kurtz* v. *Wiechmann,* 75 App. Div. 26; *Van Nostrand* v. *Moore,* 52 N. Y. 12, 20.) If any residual doubt exists that such was her purpose, it is dispelled by recourse to the unattested memoranda dehors the will.

It appears that the testatrix gave Gill a copy of her will in 1955. His awareness of its provisions when, in 1956, he received the written and oral instructions of the deceased is readily inferable. That he acquiesced in a method of distribution antithetical to an outright gift of her residuary estate to him is also manifest. In the mistaken belief that it could be legally enforced, such assent, upon which the testatrix patently relied, implied that he would carry out the testatrix' intention to create a trust of this kind. (*Reynolds* v. *Reynolds,* 224 N. Y. 429; *Edson* v. *Bartow,* 10 App. Div. 104, mod. *sub nom. Fairchild* v. *Edson,* 154 N. Y. 199, motion for reargument denied 154 N. Y. 768; *Matter of O'Hara,* 95 N. Y. 403, *supra.*)

Since the unattested letter in the handwriting of the testatrix and her oral instructions by which she purported to distribute her estate were legally ineffectual for that purpose, the trust must fail for the lack of a lawfully designated beneficiary. The residuary estate, therefore, passed by way of a resulting trust to the distributees of the deceased as property not disposed of by her will. (*Tilden* v. *Green,* 130 N. Y. 29, 45; *Holland* v. *Alcock,* 108 N. Y. 312; *Gross* v. *Moore,* 68 Hun 412, affd. 141 N. Y. 559; *Reynolds* v. *Reynolds, supra.*)

The language of the instruments construed in the cases on which respondents rely contained no such characteristics of mandatory entrustment as we find here.

The decree should be reversed on the law and the facts and the matter remitted to the Surrogate's Court of Fulton County for proceedings not inconsistent with this opinion, with costs payable from the estate to parties filing briefs. The matter of allowances on this appeal, if any, should also be remitted to the Surrogate for determination.

HERLIHY, J. (dissenting). The problem here concerns the language contained in the two paragraphs which constitute

article Third of the last will and testament of Bertha B. Warren, deceased. In the first paragraph thereof the testatrix made an absolute and unqualified devise of her property to Harry T. Gill and he was also designated as the sole executor. The language was unusual in that it provided that his personal receipt was sufficient for the discharge of all interest passing hereunder. The will, apparently drawn by an attorney — Mr. Gill was in no way associated with its draftsmanship — in the second paragraph of the article stated that her property was to be received and held and distributed in accordance with a letter of instructions accompanying the will and to carry out *her wishes* she delegated to Gill all necessary powers, both discretionary and otherwise.

The will was dated June 25, 1951, and as a sequela thereof she addressed a letter dated April 26, 1955, three years after the making of the will, in which she stated that Gill had power to dispose of anything that she owned after funeral expenses and Masses and stated, "I *would like* the following friends remembered." (Emphasis supplied.)

There are two pertinent observations from this letter. First, the underscored words "would like" have a precatory meaning and second, the will makes no mention of the masses referred to in her letter. Mr. Gill in his accounting and under Schedule G made a full disclosure not only of the letter of instructions mentioned above but also personal memoranda which he had made on occasions of his visits to the decedent and he further signified that it was his intention to honor each of the requests of the decedent.

The majority have determined that the second paragraph of article Third created a trust relationship and there being no designated beneficiary, it followed that the decedent died intestate which, as mentioned in the opinion of the Surrogate, is repugnant to the rules of construction. Intestacy is never favored when a fair interpretation of the wording of a will permits a contrary finding. If the wording of the second paragraph of this will could be deemed sufficient to overcome the strong language of the first paragraph of absolute devise, that fact in and of itself is not controlling but under the circumstances must be considered with the letter and other memoranda in order to determine the intent of the testatrix, always cognizant that the law strongly favors sustaining a will. (*Hadcox v. Cody*, 213 N. Y. 570, 572–573.) In *Matter of Fabbri*, 2 N Y 2d 236, the court said (p. 240): "This intent, as we have often said, must be gleaned not from a single word or phrase but from a sympathetic reading of the will as an entirety and in

view of all the facts and circumstances under which the provisions of the will were framed. (*Collister* v. *Fassitt*, 163 N. Y. 281; *Robinson* v. *Martin*, 200 N. Y. 159, 164; *Williams* v. *Jones*, 166 N. Y. 522, 533; *March* v. *March*, 186 N. Y. 99, 103.)   *   *   * As this court pointed out in an early opinion: ' If we can see that the inapt, or careless, use of language by the testator has created the difficulty in ascertaining his intention, but, nevertheless, feel certain as to what he meant, from reading the whole instrument in connection with the clause in question, we may subordinate the language to that meaning.' (*Matter of Miner*, 146 N. Y. 121, 130–131.) '' It is abundantly clear that this testatrix had no intentions of dying intestate.

Here we have language which admittedly constituted an absolute gift followed in the same article by words which did not disclose a clear and unequivocal intent to cut down the gift. Under such circumstances the courts favor giving effect to the absolute gift. (*Matter of Hayes*, 263 N. Y. 219, 226.) In *Clarke* v. *Leupp* (88 N. Y. 228, 230–231) the court said: '' We are of opinion that the discretionary power given to the widow to retain or dispose of the property for the benefit of herself and children was not intended by the testator to limit or cut down the prior absolute gift. These words are but a mere expression of the testator's wish that in the event of his death, his widow should make such use or disposition of the property devised as would in her judgment best provide for herself and her children.

'' It is well settled by a long succession of well-considered cases, that when the words of the will in the first instance clearly indicate a disposition in the testator to give the entire interest, use and benefit of the estate absolutely to the donee, it will not be restricted or cut down to any less estate by subsequent or ambiguous words, inferential in their intent.''

It serves little purpose to cite precedent as each case, in attempting to ascertain the intention of the testatrix, is governed by the wording of the particular will therein. It is untenable from the facts here present to place such a strained interpretation on a paragraph following a direct devise that a trust was thereafter created, the result being that by operation of law the testatrix died intestate. There was no claim of fraud, deceit, misrepresentation or other disabilities which, if present, would require such drastic action. Under the circumstances, considering the letter and memoranda, the wording of the will does not mandate a finding that the testatrix intended to create a trust of any description. It appears to me that rules of law are unnecessarily being applied against the validity of this will when it is legally feasible to apply rules in favor of sustaining the will.

I vote to affirm the order of the Surrogate.

BERGAN, P. J., and REYNOLDS, J., concur with TAYLOR, J.; HERLIHY, J., dissents, in a memorandum, and votes to affirm.

Decree reversed, on the law and the facts, and the matter remitted to the Surrogate's Court of Fulton County for proceedings not inconsistent with the opinion herein, with costs payable from the estate to parties filing briefs. The matter of allowances on this appeal, if any, is remitted to the Surrogate for determination.